UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ANTHONY EDENFIELD SR.,** * | | **CIVIL ACTION** |
| **Plaintiff** * | | **NUMBER: 22-cv-5060** |
| * | | |
| * | | **SECTION "D"** |
| **VERSUS** * | | **JUDGE VITTER** |
| * | | |
| * | | **MAGISTRATE "1"** |
| **THE CITY OF NEW ORLEANS** * | | **JUDGE VAN MEERVELD** |
| * | | |
| **Defendant** * | | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant, the City of New Orleans ("the City"), respectfully submits this memorandum in support of its Motion to Dismiss for failure to state a claim under Rule 12(b)(6).

## INTRODUCTION

This suit arises from the termination of Sergeant Anthony Edenfield's ("Plaintiff") employment with the New Orleans Police Department ("NOPD") for making offensive comments on Facebook in violation of NOPD's social media policy. Plaintiff's Complaint against the City alleges violations of 42 U.S.C. § 1983 under the First Amendment and 42 U.S.C. § 2000e et seq, Title VII race discrimination for disparate treatment and/or disparate impact. The City brings the present motion because Plaintiff's Complaint lacks sufficient allegations to sustain a § 1983 and Title VII discrimination claim. First, Plaintiff's § 1983 claim for a violation of the First Amendment is untimely and barred by the applicable one-year statute of limitations for § 1983 actions. Plaintiff also fails to state specific facts to allege a First Amendment violation. Second, Plaintiff fails to plausibly allege a violation of Title VII race discrimination under both disparate treatment and disparate impact claims. These two causes of action are distinctly different. Plaintiff does not state sufficient facts to support a disparate treatment claim. Instead, he relies on

1

conclusory allegations that he was terminated because of his race and treated less favorably than non-White sergeants and officers accused of the same or worse violations. Lastly, Plaintiff failed to exhaust his disparate impact claim in the initial administrative charge with Equal Employment Opportunity Commission ("EEOC") and further failed to state any facts to establish a neutral policy to support this claim. Thus, Plaintiff's § 1983 and Title VII claims should be dismissed as a matter of law. Any amendment to the Complaint would be futile, and all claims against the City should be dismissed.

## FACTUAL BACKGROUND

The following facts are alleged in the Complaint and are accepted as true for the purpose of this Motion. Plaintiff was employed as a Sergeant for the New Orleans Police Department in 2020. Rec. Doc. 1, ¶ 8. Following the murder of George Floyd on May 25, 2020, Plaintiff made eight social media post regarding the protests and civil unrest that subsequently ensued across the nation. Rec. Doc. 1, ¶ ¶11-14. These posts were made from Plaintiff's personal Facebook page between May 28, 2022, and June 4, 2020. Rec. Doc. 1, ¶ 14. Plaintiff's Complaint does not identify the specific content of his social media posts. However, the following eight social media posts were the subject of NOPD's internal investigation and Plaintiff's subsequent disciplinary proceedings as referenced in the Complaint:[1]

1. On Sunday at 11:08 PM Sgt. Edenfield shared a *Law Enforcement Today* article with the title, "New York Mayor's daughter arrested for blocking traffic, throwing objects at police" on his Facebook page with the post, "This trash bitch."

2. On Saturday, May 30, at 10:35 PM, Sgt. Edenfield posted "Here are your animals" on his Facebook page when sharing a video published by *The Dayumm* with the description, "Man critically injured at Dallas Riots. It appears he attempted to defend a shop with a large…"

---

[1] Pursuant to the Fed.R.Ev. 201(b), the court may take judicial notice of an adjudicative fact that is not subject to reasonable dispute; *See also*, *Taylor v. Charter Medical Corp.*, 162 F.3d 827, 829 (5th Cir. 1998).

3. On Saturday, May 30 at 11:23 PM, Sgt. Edenfield posted "SAVAGES!!!! ANIMALS!!!!" and shared a video published by Proud to Be from East San Jose with the description, "East San Jose protestors vandalizing people's cars on the freeway trying to drag people out of their cars and blocking traffic."

4. On Saturday, May 30 at 10:37 PM, Sgt. Edenfield posted "This shit has moved from being about George Floyd. These idiots want to act like animals, block the road and start a checkpoint asking people if they are police officers? I am running them over and shooting if lethal force were my only way out. The asshole under the truck got what he deserved" on his Facebook page and shared a *Law Enforcement Today* article with the subject line, "Alleged thief dragged by FedEx vehicle in St. Louis riots after protesters break into trucks."

5. On Saturday, May 30 at 9:15 PM, Sgt. Edenfield posted the comment "LMAO!!!! Out for the count" on his Facebook page and shared a video posted on Mike Gonzales-Guerrero's Facebook page with the comment, "Justified? Or excess force?" The video contains footage of a woman hitting a police officer in the face and another officer responding by hitting the women in the face.

6. On Thursday, May 28 at 8:40 AM, Sgt. Edenfield posted "Is this what you idiots call social justice? 'I got my justice!!! Got me some new matching sheets and towels.'" on his Facebook page and shared a video with 34.4 million view published by *FOX6 New Milwaukee* with the description, "Footage taken by a Minneapolis journalist shows people rushing out of Target with loads of looted product in the wake of the officer-involved death of G… See more."

7. On Thursday, June 4 at 5:58 AM, Sgt. Edenfield posted, "Burn down her house. Blow up her car and see if she still feels the same way" to his Facebook page and shared a *Daily Wire* article with the subject line "NYT Writer Nikole Hannah-Jones On Riots: Destroying Property Which Can Be Replaced…"

8. On Thursday at 8:29 PM, Sgt Edenfield posted "Animals!!! What is the point of this?" to his Facebook page and shared a June 1 *Conservative Nation* video with 6.2 million views with the subject line, "BREAKING VIDEO OF MINNEAPOLIS SEMI TRUCK BEING ATTACKED YESTERDAY BY PEACEFUL PROTESTERS AT I-35W BRIDGE!"[2]

Deputy Chief Arlinda Westbrook recommended Plaintiff's Facebook posts be categorized as hate speech, discriminatory, and advocating unnecessary force. In particular, Chief Westbrook believed Plaintiff's statements advocated unnecessary violence.[3] This determination increased the penalty

---

[2] City of New Orleans, Civil Service Commission Decision, Docket No. 9232, https://nola.gov/getattachment/ac724ada-c436-4b33-9657-570b3ebb5b4e/Anthony-Edenfield-vs-NOPD-9232/.
[3] *Id*. at page 5-6.

to a Level F, which carried a maximum penalty of termination.[4] Plaintiff was subsequently terminated on December 4, 2020, by Superintendent Ferguson. Rec. Doc. 1, ¶ 15. Plaintiff then appealed his termination to the Civil Service Commission ("Commission").

After an evidentiary hearing, the Commission reversed Plaintiff's termination and instituted an 80-day suspension for the violations.[5] Rec. Doc. 1, ¶ 16. NOPD then appealed to the Fourth Circuit Court of Appeal, which reversed the Commission's ruling and reinstated Plaintiff's termination on October 10, 2022.[6] Rec. Doc. 1, ¶ 16. Plaintiff appealed the Fourth Circuit's ruling, which is currently pending before the Louisiana Supreme Court. Rec. Doc. 1, ¶ 15.

On March 14, 2022, Plaintiff filed his initial charge with the EEOC. Rec. Doc. 1. On September 12, 2022, the EEOC returned Plaintiff's right to sue letter, making no determination as to the merits of Plaintiff's claims. Rec. Doc. 1. Plaintiff then filed this Complaint on December 6, 2022, alleging violations of the First Amendment and Title VII. He claims he was terminated and/or treated differently than other non-White sergeants and officers accused of the same violations of the social media policy or more serious violations, such as sexual harassment. Rec. Doc. 1, ¶¶ 18-19. He further contends his social media posts were protected by the First Amendment. Rec. Doc. 1. ¶¶ 18-19, 20-22.

## LAW AND ARGUMENT

**I.   LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare

---

[4] *Id.* at page 5-6.
[5] *Id.* at page 9.
[6] *Edenfield v. New Orleans Police Department*, 2022-0171 (La. App. 4 Cir. 10/10/2022), 350 So.3d 1022.

4

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and allegations of conclusory nature will not be given the presumption of truth. *Id.* at 678, 681 (citing *Twombly*, 550 U.S. at 555). For a complaint to be legally sufficient, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," and even well-pleaded facts must allow the court to "infer more than the mere possibility of misconduct." *Id.* at 679 (citing Fed. R. Civ. Proc 8(a)(2)).

## II. THE COMPLAINT FAILS TO STATE § 1983 CAUSE OF ACTION FOR VIOLATION OF THE FIRST AMENDMENT

### A. Plaintiff's First Amendment claim under § 1983 Claim is Untimely and Barred by One-Year Statute of Limitations

Although federal law does not contain a statute of limitations for § 1983 claims, "district courts use the forum state's personal injury limitations period." *Bouquet v. Lafourche Parish Sheriff's Office*, 2000 WL 1511179 at *1 (E.D. La. 2000) (quoting *Moore v. McDonald,* 30 F.3d 616, 620 (5th Cir. 1994). Plaintiff's § 1983 claim is "best characterized as a tort under Louisiana law." *Id.* Louisiana courts have explained that under Louisiana law, the general tort article is the "most analogous type of cause of action to a suit under 42 U.S.C. § 1983." *Dean v. Nunez*, 503 So. 2d 212, 214 (La. App. 4 Cir. 1987) (citing *Jones v. Orleans Parish School Board*, 688 F.2d 342 (5th Cir. 1982)). Therefore, it is governed by the one-year prescriptive period for delictual actions pursuant La. Civ. Art 3492. *Bouquet v. Lafourche Parish Sheriff's Office*, 2000 WL 1511179 at *1 (E.D. La. 2000).

While state law determines the limitation period for § 1983 actions, federal law determines when that period accrues. *Redburn v. City of Victoria*, 898 F.3d 486, 496 (5th Cir. 2018) (citing

*Piotrowski v. City of Houston*, 51 F.3d 512, 516 n.10 (5th Cir. 1995)). The Fifth Circuit has consistently held that "[u]nder federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Moore, 30 F.3d* at 620–621 (quoting *Gartrell v. Gaylor,* 981 F.2d 254, 256 (5th Cir.1993)). "The statute of limitations ... begins to run when the plaintiff is in possession of the critical facts that he has been hurt and who has inflicted the injury." *Id.* at 621. Moreover, in the context of a § 1983 First Amendment retaliation claim, the injury is unlawful retaliation resulting in an "adverse employment action," such as discharge, demotion, or formal reprimand. *Hitt v. Connell,* 301 F.3d 240, 246 (5th Cir. 2002); *Sullivan v. City of Dallas*, No. 21-cv-915, 2022 WL 3648625 (N.D. Tx. July 9, 2022).

Here, Plaintiff's § 1983 First Amendment claim accrued when he was terminated on December 4, 2020, the date of the adverse employment action. Plaintiff had one year from December 4, 2022, to file his First Amendment claim. However, Plaintiff filed this Complaint on December 6, 2022, two years after his termination. Further, the filing and processing of Plaintiff's EEOC charge did not toll the statute of limitations because the prescriptive period for § 1983 actions is not tolled while an EEOC claim is pending. *Charles v. Galliano,* No. Civ.A. 10-811, 2010 WL 3430519, at *3 (E.D. La. Aug. 26, 2010); *Bouquet v. Lafourche Parish Sheriff's Office*, 2000 WL 1511179 at *1 (E.D. La. 2000). As such, Plaintiff's § 1983 claim for the alleged violation of his First Amendment right is time-barred and this claim should be dismissed.

### B. Plaintiff Fails to Allege Sufficient Facts of a Violation the First Amendment

Even if the court finds that Plaintiff's claims are not barred by the one-year statute of limitations for § 1983 actions, Plaintiff still failed to allege sufficient facts to plausibly state a First Amendment violation. To state a First Amendment retaliation, claim pursuant to § 1983, "[a] plaintiff must show that "(1) he suffered an adverse employment action; (2) his speech involved a

6

matter of public concern; (3) his interest in speaking outweighs the employer's interest in promoting efficiency in the workplace; and (4) his speech motivated the employer's adverse employment action." *Gibson v. Kilpatrick*, 838 F.3d 476, 481 (5th Cir. 2016) (quoting *Charles v. Grief*, 522 F.3d 508, 510 n. 2 (5th Cir. 2008)).

Plaintiff failed to allege any facts that identify the speech that gives rise to this claim. Plaintiff states that he made eight social media posts between May 28, 2020, and June 4, 2020, which were the subject of his disciplinary proceedings and ultimate termination. Rec. Doc. 1, ¶ 14. However, Plaintiff does not provide the actual content of those social media posts in this Complaint, nor does he allege which specific posts and/or speech forms the basis of his First Amendment claim. As such, it is unclear whether Plaintiff contends that his First Amendment claim is based on all eight of the social media posts, a single post, or specific sets of the statements or comments within the eight posts. Because Plaintiff fails to identify his protected speech, Plaintiff's First Amendment claim be dismissed.

### III. <u>PLAINTIFF FAILS TO STATE A CLAIM FOR TITLE VII RACE DISCRIMINATION</u>

Plaintiff brings his second cause of action under Title VII asserting race discrimination for disparate treatment and/or disparate impact. Rec. Doc. 1, ¶ 2. However, disparate treatment and disparate impact claims represent two largely separate theories of discrimination. *Pacheco v. Mineta,* 448 F.3d 783, 787 (5th Cir. 2006) (citing *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977)). In *Pedregon v. Wolf*, the court explains that "[d]isparate treatment claims are grounded on proof of discriminatory motive—in other words, intentional discrimination." 2020 WL 6146169, at *2 (E.D. La. Oct. 20, 2020) (citing *Pacheco*, 448 F.3d at 789). However, disparate impact discrimination is "grounded on 'employment policies or practices that are facially neutral

7

in their treatment of protected groups but in fact have a disproportionately adverse effect on such protected groups.'" *Id. (quoting Pacheco*, 448 F.3d at 789).

   A. **Plaintiff Fails to Allege Sufficient Facts to State a Disparate Treatment Claim**

While a plaintiff is not required to plead a prima facie case based on discrimination to survive Rule 12(b)(6), he must set forth allegations that would enable the court to reasonably infer that his employer discriminated against him in violation of Title VII and took the alleged adverse employment action because he is a member of a protected class. *Cicalese v. Univ. of Texas Med. Branch,* 924 F.3d 762, 766 (5th Cir. 2019) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, (2002)). For purposes of surviving a Rule 12(b)(6) motion, there are two ultimate elements a plaintiff must plead to support their disparate-treatment claims under Title VII: (1) "an 'adverse employment action,' (2) taken against plaintiff 'because of [their] protected status.'" *Id.* at 767 (quoting *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 576 (5th Cir. 2004)). A disparate-treatment plaintiff must establish "that the defendant had a discriminatory intent or motive" for taking a job-related action. *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 986 (1988)).

Here, Plaintiff alleged an adverse employment action, his termination. However, he failed to state sufficient facts to establish that the action taken was against him was because of his race. Plaintiff alleges "other non-White Sergeants and non-White officers who faced the same violation of the social media policy were treated differently, meaning that they were not terminated for making comments, they were suspended or given disciplinary action less that termination." Rec. Doc. 1, ¶ 18. Plaintiff also alleges that "other non-White Sergeants and non-White officers who faced more egregious violations, such as sexual harassment, were not terminated even when those violations were found sustained by the City." Rec. Doc. 1, ¶ 19.

District courts and the Fifth Circuit have routinely dismissed similar conclusory allegations on a Rule 12 motion. In *Somers v. Univ. of Texas MD Anderson Cancer Ctr.,* the district court granted motion for partial dismissal under Rule 12, finding that the plaintiff failed to allege sufficient facts to state a disparate-treatment claim. 2019 WL 5300215, at *3 (S.D. Tex. Sept. 24, 2019). The plaintiff in *Somers* asserted that the defendant intentionally discriminated against her because of her race by treating her less favorably than her non-Black co-workers. The court found plaintiff's statement were "nothing more than a conclusory allegation which cannot be considered for the purposes of determining whether Somers has stated a plausible race discrimination claim." *Id.* In *Whitlock v. Lazer Spot, Inc.*, the Fifth Circuit affirmed the district court's dismissal of the plaintiff's allegations that White employees accused of more serious infractions were not terminated. 657 F. App'x 284, 286-7 (5th Cir. 2016). The court noted that plaintiff failed to specify the White employees' jobs and work violations. The court ultimately found that the plaintiff's claims were conclusory and did not contain sufficient content to draw the inference that the defendant was liable for the termination of the plaintiff's employment because of his race. *Id.*

Plaintiff's allegations fail for the same reasons. Plaintiff does not sufficiently state the jobs or actions by other non-White officer who allegedly faced lesser disciplinary penalties for the same or similar violation of the social media policy. Other than Plaintiff's conclusory statements, there are no other factual allegations to support the inference that Plaintiff was terminated because of his race or treated less favorably than other non-White officers. As such, Plaintiff fails to plausibly state a claim for Title VII race discrimination and his disparate treatment claim should be dismissed.

**B. Plaintiff Fails to State Sufficient Facts to Allege a Disparate Impact Claim**

A plaintiff alleging a disparate impact claim "must show (1) a facially neutral policy; (2)

that, in fact, has a disproportionately adverse effect on a protected class." *Richardson v. Porter Hedges, LLC,* 22 F. Supp. 3d 661, 665 (S.D. Tex. 2014) (citing *Pacheco* 448 F.3d at 789). Ordinarily, an employee may not base a Title VII claim on an action that was not previously asserted in a formal charge of discrimination to the EEOC, or that could not "reasonably be expected to grow out of the charge of discrimination." *Filer v. Donley,* 690 F.3d 643, 647 (5th Cir. 2012) (citing *Pacheco,* 448 F.3d at 789). This determination "involves a fact-intensive analysis of the plaintiff's statement in the charge that looks slightly beyond the four-corners of the charge to the substance." *Richardson v. Porter Hedges, LLC*, 22 F. Supp. 3d 661, 665 (S.D. Tex. 2014) (citing *Pacheco,* 448 F.3d 738 at 789). The purpose of this exhaustion doctrine is to facilitate the administrative agency's investigation and conciliatory functions and to recognize its role as primary enforcer of anti-discrimination laws. *Filer,* 690 F.3d at 647.

In *Gordon v. Peters,* the Fifth Circuit affirmed the district court's grant of summary judgment dismissing plaintiff's disparate impact claim for failure to exhaust. The court held that the plaintiff failed to allege a facially neutral policy that disproportionately impacted women in her administrative complaint and raised only disparate treatment allegations. 2008 WL 162866, at *2 (5th Cir. Jan. 16, 2008) (citing, *Pacheco*, 448 F.3d at 793). In *Richardson v. Porter Hedges, LLC*, the district court dismissed the plaintiff's disparate impact claims on a Rule 12 motion finding that only an investigation into disparate treatment was reasonably expected to grow from the plaintiff's EEOC charge. 22 F. Supp. 3d 661, 666 (S.D. Tex. 2014). The court stated "[a]ll these incidents—not being promoted, being reprimanded, and being discharged—are examples of disparate treatment, not disparate impact, because they involve Richardson being individually treated worse than others allegedly based on her race or age." *Id.*

Neither Plaintiff's EEOC charge nor his Complaint identify a neutral policy that would give rise to disparate impact claim. Plaintiff's EEOC charge states that he was terminated for violating NOPD's social media policy based on "perceived" racial comments he posted on Facebook. Rec. Doc. 1, p. 10-11. Plaintiff then stated that Lieutenant Jimmy Turner, an African American officer, who "committed racial discrimination against another Caucasian Sergeant was only given a small suspension." *Id.* Plaintiff claims he "was subject to different terms and conditions than a Black officer." At best, Plaintiff's claims describes the way he was treated compared to other non-White officers, which is more consistent with a disparate treatment claim. These allegations do not support the conclusion that a disparate impact claim could reasonably be expected to grow out of Plaintiff's administrative charge. Thus, Plaintiff failed to exhaust his disparate impact claim in his administrative charge and this claim should be dismissed.

Moreover, Plaintiff's Complaint fails to allege sufficient facts to plausibly state a facially neutral policy or how that policy has disproportionate adverse effect of White sergeants or officers. Plaintiff merely offers the buzz word "disparate impact" one-time in his Complaint to support this theory. Rec. Doc. 1, ¶ 2. Plaintiff's single, conclusory allegation fails to assert any facts that would plausibly state a claim for disparate impact. Therefore, Plaintiff failed to state a claim for disparate impact and Count II of the Complaint should be dismissed.

## **CONCLUSION**

For the reasons stated above, Plaintiff has failed to state a claim against the City for which relief can be granted. Plaintiff's First Amendment claim is barred by the one-year statute of limitations for § 1983 actions, and further, Plaintiff failed to allege sufficient facts to support this claim. Plaintiff also failed to state sufficient facts to state a Title VII race discrimination claim for disparate treatment and/or disparate impact. Plaintiff relies on conclusory allegations that he was

terminated because of his race and/or treated less favorably than non-White officers. Moreover, Plaintiff failed to exhaust his disparate impact claim in the initial charge with the EEOC and his Complaint failed to identify a neutral policy to support this claim. The City respectfully requests that this Court dismiss all of Plaintiff's claims with prejudice, at Plaintiff's cost.

Respectfully Submitted,

**_____/s/ Dashia Myles_____**
**DASHIA MYLES, LSB # 38845**
ASSISTANT CITY ATTORNEY
DASHIA.MYLES@NOLA.GOV
**RENEE GOUDEAU, LSB # 33157**
DEPUTY CITY ATTORNEY
REGOUDEAU@NOLA.GOV
**CORWIN ST. RAYMOND, LSB # 31330**
CHIEF DEPUTY CITY ATTORNEY
CMSTRAYMOND@NOLA.GOV
**DONESIA TURNER, LSB # 23338**
CITY ATTORNEY
DONESIA.TURNER@NOLA.GOV
1300 PERDIDO STREET
CITY HALL - ROOM 5E03
NEW ORLEANS, LOUISIANA 70112
TELEPHONE: (504) 658-9800
FACSIMILE: (504) 658-9868